**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CRAIG PHILIPS;<br>GUN OWNERS OF AMERICA, INC.; and<br>GUN OWNERS FOUNDATION,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>LT. COL. GEORGE L. BIVENS, in His<br>Official Capacity as Acting Commissioner<br>of the Pennsylvania State Police; and<br>SHERIFF MICHAEL T. SLUPE, in His<br>Official Capacity as the Butler County<br>Sheriff,<br><br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil No.: _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COME NOW Plaintiffs Craig Philips, Gun Owners of America, Inc., and Gun Owners Foundation, by and through undersigned counsel, and allege as follows:

**INTRODUCTION**

1. This case involves a Second Amendment challenge to Pennsylvania's statutory denial of License to Carry Firearms ("LTCF") eligibility to any person who has been convicted of any offense under the Controlled Substance, Drug, Device and Cosmetic Act ("CSDDCA"), irrespective of the facts of the underlying offense or the offender's peaceful nature. *See* 18 Pa.C.S. § 6109(e)(1)(ii).

1

2. Such denial of LTCF eligibility has real consequences for the rights of Plaintiffs – and indeed all Pennsylvanians – to bear arms. Without an LTCF, Plaintiffs are unable to publicly carry a concealed handgun on or about their persons or carry a handgun within their vehicles absent specific exceptions. *See* 18 Pa.C.S. § 6106. And because Pennsylvania law separately requires an LTCF to carry a firearm – openly *or* concealed – in a "city of the first class," a conviction under the CSDDCA transforms the entirety of the City of Philadelphia into a public carry-free zone. *See Id.* § 6108. Finally, unless licensed or exempt, Pennsylvania law significantly restricts carrying a firearm on public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive. *See* 18 Pa.C.S. § 6107.

3. The Pennsylvania CSDDCA regulates a wide range of conduct relating to the manufacture, sale, and possession of controlled substances, other drugs, devices, and cosmetics. The CSDDCA also establishes penalties for violations, confers powers on the courts and the secretary and Department of Health, and effectively created the Pennsylvania Drug, Device and Cosmetic Board. The CSDDCA further establishes schedules of controlled substances, requires registration of persons engaged in the pharmaceutical trade, and provides for the revocation or suspension of certain licenses and registrations.

4. Most germane to this action, Section 13 of the CSDDCA establishes crimes ranging from the felony offense of Possession with Intent to Deliver a Controlled Substance, to ungraded misdemeanors such as Possession of a Small Amount of

2

marijuana, simple Possession of a Controlled Substance, and Possession of Drug Paraphernalia.

5.  In this action, Plaintiffs do not challenge 18 Pa.C.S. § 6109(e)(xiii) & (e)(1)(xiv) denials for those who have been convicted of serious CSDDCA offenses which render them ineligible to possess firearms under 18 Pa.C.S. § 6105(c)(2) and 18 U.S.C. § 922(g)(1) (*e.g.*, felonies), but rather only CSDDCA-related denials for those who remain otherwise eligible to possess firearms under state and federal law, but are denied by virtue of 18 Pa.C.S. § 6109(e)(1)(ii).

6.  In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 33 (2022), the Supreme Court unambiguously held that the Second Amendment "guarantees … a right to 'bear' arms in public for self-defense." In *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008), the Court explained that this right "is exercised individually and belongs to all Americans," and most recently, in *Wolford v. Lopez*, 2026 U.S. LEXIS 2720, at *10 (June 25, 2026), the Court reiterated that "[t]he phrase 'to keep and bear Arms' … signifies what its terms mean in ordinary usage – that is, to 'have' and 'carry' Arms.'"

7.  Moreover, in *United States v. Hemani*, the Supreme Court recently explained that the federal drug-related "unlawful users" prohibition, 18 U.S.C. § 922(g)(3), was unconstitutional as applied to that defendant who, like Plaintiff Craig Philips here, used marijuana at some point. *See United States v. Hemani*, 2026 U.S. LEXIS 2559 (June 18, 2026).

8. In *Hemani*, the federal government attempted to demonstrate a historical tradition of disarming unlawful drug users by pointing to "'habitual drunkard' laws." *Hemani*, 2026 U.S. LEXIS 2559, at *14. However, the Court distinguished those "habitual drunkard laws" on the basis that they did not target "those who simply drank regularly," because if they did, "many notable early Americans could have faced trouble." *Id.* at *18.

9. Instead, during the Founding era, there was a "'culture of copious drinking.'" *Hemani*, 2026 U.S. LEXIS 2559, at *19.

10. And, because there was no evidence that Hemani's usage of marijuana "ever made him a danger to himself or others," the Court held Hemani's prosecution for firearm possession unconstitutional. *Hemani*, 2026 U.S. LEXIS 2559, at *14.

11. In so holding, the Court rejected the government's theory "that anyone who regularly uses marijuana is categorically violent and dangerous without any further showing." *Hemani*, 2026 U.S. LEXIS 2559, at *29. To hold otherwise would grant the government a "'broad power to designate any group as dangerous and thereby disqualify its members from having a gun,'" which "'would … 'quickly swallow' the Second Amendment." *Id.* at * 29 (quoting *Kanter* v. *Barr*, 919 F. 3d 437, 465 (7th Cir. 2019) (Barrett, J., dissenting)).

4

## PARTIES

12.     Plaintiff Craig Philips is a natural person and citizen of the United States and of the Commonwealth of Pennsylvania.  Mr. Philips resides in Butler, Pennsylvania, in this district.  Mr. Philips is a member of Gun Owners of America, Inc. and a supporter of Gun Owners Foundation.  *See* Declaration of Craig Philips.

13.     Plaintiff honorably served in the United States Air Force, beginning in 1989 until his honorable discharge in 1992 following the Gulf War.

14.     In 1994, Plaintiff was arrested/convicted for, *inter alia,* Possession of a Small Amount of Marijuana pursuant to 35 P.S. § 780-113(a)(31), which is a violation of the Pennsylvania CSDDCA.

15.     The offense is an ungraded misdemeanor and carries a maximum penalty of imprisonment not exceeding thirty days, a fine not exceeding five hundred dollars ($500), or both.  35 P.S. § 780-113(g).

16.     The maximum penalties are lesser than that of a non-traffic summary offense in Pennsylvania, which carries possible penalties of imprisonment for a term of not more than 90 days.  18 Pa.C.S. §§ 106(c), 1105.

17.     Plaintiff later worked for approximately twelve years as an air conditioning equipment mechanic for the Department of Veterans Affairs and recently retired from that position.

18.     Plaintiff has not used marijuana since his 1994 marijuana conviction.

19.     Plaintiff is otherwise eligible to own and possess firearms and has successfully purchased handguns after passing the required background checks.

20. Nevertheless, Plaintiff remains permanently ineligible for a Pennsylvania License to Carry Firearms under 18 Pa.C.S. § 6109(e)(1)(ii) based on his 1994 conviction for Possession of a Small Amount of Marijuana.

21. Defendants, in enforcing 18 Pa.C.S. § 6109(e)(1)(ii), have denied Plaintiff Philips a Pennsylvania LTCF based on conduct that occurred more than thirty years ago.

22. The Pennsylvania LTCF is not merely a concealed-carry license. Without an LTCF, Plaintiffs are substantially restricted from carrying or transporting a firearm in a vehicle, carrying a firearm in Philadelphia, carrying a firearm for protection during a declared state of emergency, and exercising the right to bear arms in ordinary public life.

23. Indeed, Pennsylvania law generally prohibits carrying a firearm in a vehicle without a valid license, subject to limited exceptions. Pennsylvania law also prohibits carrying a firearm on public streets or public property in Philadelphia unless the person is licensed or otherwise exempt. Finally, unless licensed or exempt, Pennsylvania law significantly restricts carrying a firearm on public streets or upon any public property during a proclaimed state of emergency. *See* 18 Pa.C.S. §§ 6106, 6107, 6108, 6109.

24. The denial of Plaintiff Philips' LTCF therefore burdens not only concealed carry, but the practical ability to bear arms outside the home for lawful self-defense. Under *Bruen*, Defendants cannot bear their historical burden by reference to a decades-old marijuana conviction where Plaintiff Philips has lived a

stable, productive, and law-abiding life for more than thirty years thereafter and remains legally eligible to possess firearms.

25.    Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business in Springfield, Virginia.  GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code.  GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners.  GOA has more than two million members and supporters across the country, including tens of thousands within Pennsylvania, many of whom reside within this district.  Like Plaintiff Philips, some of these members and supporters remain eligible to possess firearms generally and wish to obtain a Pennsylvania LTCF, but are permanently prohibited from obtaining an LTCF by virtue of minor drug-related convictions under Pennsylvania law.  *See* 18 Pa.C.S. § 6109(e)(1)(ii).  Consequently, these GOA members and supporters have been, are being, and will continue to be irreparably harmed by Pennsylvania's unlawful contravention of their Second and Fourteenth Amendment rights.  *See* Declaration of Val W. Finnell.

26.    Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia.  GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code.  GOF is financially supported by gun owners across the country, including by two of its board members, and from

7

contributions received from individuals through the Combined Federal Campaign, all of whom receive updates about GOF's activities and fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. Although not a "traditional" membership organization, courts have found GOF to possess "indicia of membership" under *Hunt v. Wash. State Apple Advert. Comm'n*, 32 U.S. 333 (1977), for purposes of representing its supporters' interests in litigation. *See, e.g., Texas v. BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024). Like Plaintiff Philips, some of these supporters remain eligible to possess firearms generally and wish to obtain a Pennsylvania LTCF despite prior prohibiting CSDDCA convictions under 18 Pa.C.S. § 6109(e)(1)(ii). *See* Declaration of Val W. Finnell.

27. Defendant Lt. Col. George L. Bivens is the Acting Commissioner of the Pennsylvania State Police (hereinafter "PSP") and is sued in his official capacity. As Acting Commissioner, Bivens has final decision-making authority over the unconstitutional policies alleged herein. Furthermore, Bivens is responsible for executing and administering laws, customs, practices, and policies, and is presently enforcing the laws, customs, practices, and policies challenged and complained of in this matter. In particular, as Acting Commissioner, Bivens has final decision-making authority over PSP, which unconstitutionally enforces 18 Pa.C.S. § 6109(e) against Plaintiffs, maintains the Pennsylvania Instant Check System ("PICS"), and performs background checks using PICS. Defendant is sued in his official capacity for prospective declaratory and injunctive relief.

8

28.    Defendant Sheriff Michael T. Slupe is the Sheriff of Butler County, Pennsylvania and is responsible for receiving, investigating, approving, and denying applications for Licenses to Carry Firearms under 18 Pa.C.S. § 6109. Defendant Slupe denied Plaintiff Philips' application for an LTCF as explained below. Defendant Slupe is sued in his official capacity for prospective declaratory and injunctive relief.

## JURISDICTION AND VENUE

29.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1651, 2201, 2202 and 42 U.S.C. §§ 1983 and 1988.

30.    Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

**Second Amendment Methodology.**

31.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

32.    In its landmark 2008 decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court rejected the nearly uniform opinions reached by the courts of appeals, which for years had claimed that the Second Amendment protects only a communal right of a state to maintain an organized militia. *Id.* at 581. Setting the record straight, the *Heller* Court explained that the Second Amendment

9

recognizes, enumerates, and guarantees to *individuals* the preexisting right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *Id.* at 592.

33.    Then, in *McDon. v. City of Chicago.* 61 U.S. 742 (2010), the Court explained that the Second Amendment is fully applicable to the states through operation of the Fourteenth Amendment. *Id.* at 791.

34.    Next, in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the Court reaffirmed its conclusion in *Heller* that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," and that this "Second Amendment right is fully applicable to the States." *Id.* at 411, 416.

35.    And as the Supreme Court explained in *Bruen*, the Second and Fourteenth Amendments together guarantee individual Americans not only the right to "keep" firearms in their homes, but also the right to "bear arms," meaning "to carry a handgun for self-defense outside the home," free from infringement by either federal or state governments. *Bruen*, 597 U.S. at 10.

36.    Importantly, in addition to clearly recognizing the right of "'law-abiding, responsible citizens' … to public carry" (*Bruen*, 597 U.S. at 38 n.9), *Bruen* also rejected outright the methodology previously used within a majority of Circuits to judge Second Amendment challenges.

37.    Rejecting the previously used widespread atextual, "judge-empowering" (*Bruen*, 597 U.S. at 22) interest-balancing approach, *Bruen* directed (again) the

federal courts to first principles:  to assess the text of the Second Amendment, as informed by the historical tradition.  *Id.* at 19.

38.    First, the Supreme Court "decline[d] to adopt that two-part approach" used in the majority of Circuits, reiterating that, "[i]n keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Bruen*, 597 U.S. at 17.

39.    Second, the Supreme Court held that "[t]o justify [a] regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 17.

40.    Third, in reviewing the historical evidence, the *Bruen* Court cabined review of relevant history to a narrow time period, because "not all history is created equal," focusing on the period around the ratification of the Second Amendment, and *perhaps* the Fourteenth Amendment, but only to the extent that it "mere[ly] confirm[s]" a Founding-era tradition.  *Bruen*, 597 U.S. at 37.  Indeed, the Court noted that "post-ratification" interpretations "cannot overcome or alter that text," and "we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the

Bill of Rights was adopted in 1791." *Id.* at 36, 37; *see also Id.* at 37-60 (discussing the lack of relevant historical prohibitions on concealed carry in public).

41.    In other words, according to the Second Amendment's text, and as elucidated by the Court in *Bruen*, if a member of "the people" wishes to "keep" or "bear" a protected "arm," then the ability to do so "shall not be infringed." Period. There are no "ifs, ands, or buts," and it does not matter (even a little bit) how important, significant, compelling, or overriding the government's justification for or interest in infringing the right. It does not matter whether a government restriction "minimally" versus "severely" burdens (infringes) the Second Amendment. There are no relevant statistical studies to be consulted. There are no sociological arguments to be considered. The ubiquitous problems of crime or the density of population do not affect the equation. The only appropriate inquiry then, according to *Bruen*, is what the "public understanding of the right to keep and bear arms" was during the ratification of the Second Amendment in 1791. *Bruen*, 597 U.S. at 36-38.

42.    Lest there be any doubt, the Supreme Court has also instructed as to the scope of the protected persons, arms, and activities covered by the Second Amendment.

43.    First, *Heller* explained that, "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. *Heller* cited to *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990), which held that "'[T]he people' … refers to a class of persons who are part of a national community or

who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.*; *Heller*, 554 U.S. at 581 (Second Amendment "is exercised individually and belongs to all Americans.").

44. Second, *Heller* turned to the "substance of the right: 'to keep and bear Arms.'" *Heller*, 554 U.S. at 581. The Court explained that "'[k]eep arms' was simply a common way of referring to possessing arms, for militiamen *and everyone else.*" *Id.* at 583. Next, the Court instructed that the "natural meaning" of "bear arms" was "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584. And "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'" *Id.* *Bruen* was more explicit, explaining that the "definition of 'bear' naturally encompasses public carry." *Bruen*, 597 U.S. at 32.

45. Third, with respect to the term "arms," the Court explained that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. Indeed, the "arms" protected by the Second Amendment include "weapons of offence, or armour of defence…. '[A]rms' [are] 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Id.* at 581.

46. The *Bruen* Court also acknowledged the inherent risk in *all* permitting schemes, noting that, "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for

example, lengthy wait times in processing license applications or exorbitant fees <u>deny ordinary citizens their right to public carry</u>." *Bruen*, 597 U.S. at 38 n.9 (emphasis added).

47.   And in *United States v. Hemani*, the Supreme Court held that the firearm prosecution of an individual who used "marijuana about every other day" did not comport with the Second Amendment. *United States v. Hemani*, 2026 U.S. LEXIS 2559, at *21 (June 18, 2026).

48.   In *Hemani*, the Supreme Court conducted a historical analysis of Founding-era "habitual drunkard laws," which "differ[ed] dramatically" from 18 U.S.C. § 922(g)(3), the statute under which Mr. Hemani had been charged. *Hemani*, 2026 U.S.  LEXIS 2559, at *16.  Indeed, the "habitual drunkard laws" "targeted different kinds of people, did so for different purposes, and operated in different ways." *Id.*

49.   Pennsylvania law, like the law found unconstitutional in *Hemani*, operates to deprive those with convictions under the CSDDCA of their full rights to "keep and bear arms."

**Plaintiffs' Harms**

50.   Plaintiff Craig Philips served in the United States Air Force and was honorably discharged in 1992.

51.   In 1994, Plaintiff Philips was convicted of Possession of a Small Amount of Marijuana.  Plaintiff has not used marijuana or other unlawful drugs since 1994.

14

52.    Since the 1994 conviction, Plaintiff Philips has not been convicted of any other crime.

53.    Plaintiff Philips later worked for approximately twelve years for the Department of Veterans Affairs as an air conditioning equipment mechanic.  Plaintiff recently retired from that federal employment.

54.    Plaintiff Philips has been married since 2006 and has lived a stable, productive, and law-abiding life.

55.    Plaintiff Philips is not prohibited from owning or possessing firearms under Pennsylvania or federal law.  In fact, Plaintiff Philips has successfully purchased handguns and passed the required background checks.

56.    In 2024, Plaintiff Philips applied for a Pennsylvania License to Carry Firearms in Butler County under 18 Pa.C.S.  § 6109, but was denied because Pennsylvania law, as applied through the PICS system, treats Plaintiff Philips' 1994 marijuana conviction as a disqualifying offense notwithstanding his continued eligibility to possess firearms and his decades of law-abiding conduct.

57.    Defendant Sheriff Slupe denied Plaintiff Philips solely because Philips was denied by the Pennsylvania Instant Check System (PICS), which is managed, operated, and controlled by PSP.  *See* Exhibit "A," Denial Letter dated October 18, 2024.

58.    Plaintiff Philips did not file a PICS challenge upon realizing he is ineligible based upon his 1994 conviction for Possession of a Small Amount of Marijuana.

15

59. An appeal would have been futile because his 1994 conviction for Possession of a Small Amount of Marijuana indisputably renders him statutorily ineligible for a License to Carry Firearms under 18 Pa.C.S. § 6109(e)(1)(ii).

60. Plaintiff Philips' denial was solely based upon his conviction for Possession of a Small Amount of Marijuana. He is otherwise eligible for a License to Carry Firearms.

61. No current facts support any finding that Plaintiff Philips is dangerous to himself or others. Plaintiff Philips has not used marijuana in more than thirty years. Plaintiff's federal employment, military service, stable marriage, retirement from the Department of Veterans Affairs, and lawful firearm purchases all demonstrate that Plaintiff Philips is not a danger to public safety.

62. Defendants' denial of Plaintiff's LTCF prevents Plaintiff from exercising the right to bear arms in ordinary public life. Without an LTCF, Plaintiff Philips cannot lawfully carry a firearm concealed on or about his person and is substantially restricted from carrying a firearm in a vehicle.

63. Moreover, without an LTCF, Plaintiff Philips is generally prohibited from carrying a firearm on public streets or public property in Philadelphia and he faces substantial legal uncertainty and risk when traveling armed for lawful self-defense.

64. Additionally, without an LTCF, Plaintiff Philips is generally prohibited from carrying a firearm in the Commonwealth upon the public streets or upon any

16

public property during an emergency proclaimed by a State or municipal governmental executive.

65.    Plaintiff Philips desires to carry a handgun for lawful self-defense while traveling throughout Pennsylvania, including while operating a motor vehicle, while visiting Philadelphia, and for protection during a declared state of emergency.

66.    Defendants' denial therefore infringes Plaintiff Philips' right to bear arms.

67.    Defendants cannot historically justify that infringement based on a single marijuana conviction from 1994 where Plaintiff Philips has since lived as a law-abiding citizen and remains eligible to possess firearms.

68.    Like Plaintiff Philips, Plaintiffs GOA and GOF have Pennsylvania members and supporters that remain eligible to possess firearms generally but are prohibited from obtaining an LTCF, often as a result of single, decades-old, nonviolent CSDDCA convictions, such as Possession of a Small Amount of Marijuana. *See* Declaration of Val W. Finnell.

69.    Defendants cannot constitutionally enforce 18 Pa.C.S. § 6109(e)(1)(ii) against Plaintiffs because, by "defining its scope through the [The Controlled Substance, Drug, Device and Cosmetic Act] – a statute animated by a variety of other concerns – it is far from obvious that [18 Pa.C.S. § 6109(e)(1)(ii)] confines its reach to those who are categorically and unusually dangerous." *Hemani*, 2026 U.S. LEXIS 2559, at *27.

70. Accordingly, individuals like Plaintiff Philips and the GOA and GOF members and supporters referenced above, who have convictions under the CSDDCA but are not otherwise alleged to be "dangerous," cannot be constitutionally disarmed.

**COUNT I**
**U.S. CONST. AMENDS.  II & XIV**
**RIGHT TO KEEP AND BEAR ARMS**
**42 U.S.C. § 1983 AGAINST DEFENDANTS**

71. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

72. The Second Amendment protects the right to keep and bear arms for lawful purposes, including self-defense.  The right to bear arms includes the right to carry firearms in public for lawful self-defense.  Plaintiffs are among "the people" protected by the Second Amendment.  Plaintiffs are legally eligible to own and possess firearms.

73. The Fourteenth Amendment incorporates the Second Amendment against the States.

74. Defendants cannot demonstrate that permanent ineligibility for an LTCF based on a conviction under The Controlled Substance, Drug, Device and Cosmetic Act is consistent with this Nation's historical tradition of firearm regulation.

75. More specifically, historical tradition does not support permanently denying the right to bear arms to a person based upon the nonviolent offense of Possession of a Small Amount of Marijuana occurring over three decades prior.

18

76.    Plaintiff Philips has successfully purchased handguns after passing required background checks.  Defendants denied Plaintiff Philips an LTCF, thereby preventing him from exercising the right to bear arms in ordinary public life. Defendants' denial burdens conduct protected by the Second Amendment.

77.    The denial of an LTCF does not merely prevent concealed carry.  It substantially impairs Plaintiff's ability to exercise the right to bear arms throughout Pennsylvania because state law generally prohibits carrying firearms in vehicles and carrying firearms on public streets in Philadelphia without a valid license.  It additionally significantly restricts carrying a firearm on public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive.

78.    In reality, this prohibition applies solely to relatively minor possessory offenses for which individuals remain eligible to own and possess firearms under Pennsylvania law.  Those convicted of offenses under the CSDDCA that are punishable by more than one year as a felony, or more than two years as a misdemeanor, are independently ineligible for an LTCF under 18 Pa.C.S.  § 6109 (e)(1)(xiii) & (e)(1)(xiv).

79.    Defendants cannot demonstrate that denying individuals an LTCF based on relatively minor drug possessory offenses is consistent with this Nation's historical tradition of firearm regulation.  Historical tradition does not support permanently denying the right to bear arms to a person based upon "any" drug

possessory offense when they otherwise remain legally eligible to own and possess firearms.

80.    Defendants' enforcement of 18 Pa.C.S. § 6109(e)(1)(ii) and their accompanying denial of Plaintiffs' LTCFs violates the Second and Fourteenth Amendments, both facially and as applied to Plaintiffs.

**COUNT II**
**U.S. CONST. AMENDS. II & XIV**
**RIGHT TO KEEP AND BEAR ARMS**
**42 U.S.C. § 1983 AGAINST DEFENDANTS**
**LIMITED FACIAL CHALLENGE TO 18 PA.C.S. § 6109(e)(1)(ii)**

81.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

82.    The Second Amendment protects the right to keep and bear arms for lawful purposes, including self-defense. The right to bear arms includes the right to carry firearms in public for lawful self-defense.

83.    Defendants cannot demonstrate that permanent ineligibility for an LTCF based on a single conviction for Possession of a Small Amount of Marijuana is consistent with this Nation's historical tradition of firearm regulation.

84.    Defendants cannot demonstrate that denying individuals an LTCF based on Possession of a Small Amount of Marijuana is consistent with this Nation's historical tradition of firearm regulation. Historical tradition does not support permanently denying the right to bear arms to a person based upon a single conviction for Possession of a Small Amount of Marijuana.

85.    Defendants' enforcement of 18 Pa.C.S. § 6109(e)(1)(ii), insofar as it applies to a conviction for Possession of a Small Amount of Marijuana under 35 P.S. § 780-113(a)(31), violates the Second and Fourteenth Amendments.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

A.    An order declaring that Defendants' denial of Plaintiff Craig Philips' License to Carry Firearms violates the Second and Fourteenth Amendments, both facially and as applied to him;

B.    An order permanently enjoining Defendants and all other officers, agents, servants, employees, and persons under the authority of the Commonwealth from denying Plaintiff Craig Philips a License to Carry Firearms based on his 1994 marijuana conviction absent current, individualized evidence that Plaintiff is likely to act in a manner dangerous to public safety;

C.    An order declaring that Defendants' enforcement of 18 Pa.C.S. § 6109(e)(1)(ii), violates the Second and Fourteenth Amendments, both facially and as applied;

D.    An order permanently enjoining Defendants and all other officers, agents, servants, employees, and persons under the authority of the Commonwealth from enforcing 18 Pa.C.S. § 6109(e)(1)(ii) as violative of the Second and Fourteenth Amendments, both facially and as applied;

E.  An order permanently enjoining Defendants and all other officers, agents, servants, employees, and persons under the authority of the Commonwealth from enforcing 18 Pa.C.S. § 6109(e)(1)(ii) against individuals who are legally eligible to own and possess firearms generally;

F.  An order permanently enjoining Defendants and all other officers, agents, servants, employees, and persons under the authority of the Commonwealth from enforcing 18 Pa.C.S. § 6109(e)(1)(ii) based upon convictions for Possession of a Small Amount of Marijuana;

G.  Order Defendants to process Plaintiffs' License to Carry Firearms applications consistent with the Second and Fourteenth Amendments' requirement that Plaintiffs only be denied upon individualized evidence that Plaintiffs are likely to act in a manner dangerous to public safety;

H.  Award Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

I.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

|  | /s/ Michael A. Giaramita Jr. |
|---|---|
| Gilbert J. Ambler (PA 326124) | Michael A. Giaramita Jr. (PA 319299) |
| Oliver M. Krawczyk (PA 334423) | GIARAMITA LAW OFFICES, P.C. |
| AMBLER LAW OFFICES, LLC | 101 West Chester Pike, Suite 1A |
| 115 South Hanover Street, Suite 100 | Havertown, PA 19083 |
| Carlisle, PA 17013 | T: (484) 558-0076 |
| T: (717) 525-5822 | F: (484) 202-6332 |
| F: (540) 773-2414 | mike@glawpa.com |
| gilbert@amblerlawoffices.com | |
| oliver@amblerlawoffices.com | *Attorneys for Plaintiffs* |

22